UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METRO T. PROPERTIES, LLC,

    Plaintiff,

v.

COUNTY OF WAYNE and
ERIC R. SABREE,

    Defendants.
_____/

Case No. 23-cv-11457
Honorable Linda V. Parker

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 7)

This putative class action arises from the foreclosure of real property previously owned by Plaintiff Metro T. Properties LLC ("Metro") due to a property tax delinquency. In a state-court Complaint removed to federal court under 28 U.S.C. § 1331, Metro alleges that Defendants' retention of the proceeds from the sale of the property above the tax delinquency constituted an unlawful taking in violation of Metro's Fifth Amendment rights, as applicable to the States through the Fourteenth Amendment. Metro also claims that Defendants' retention of the surplus proceeds violated the Michigan Constitution and constituted an excessive fine in violation of the Eighth Amendment, an inverse condemnation in violation of Michigan law, and unjust enrichment under Michigan law.

The matter is presently before the Court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Defendants argue that Metro's claims are barred because Michigan law sets forth an express and exclusive procedure for property owners to claim surplus proceeds, but Metro did not avail itself of those procedures. Defendants further argue that Metro's inverse condemnation, unjust enrichment, and Eighth Amendment claims also fail on their merits. The motion has been fully briefed.[1] (ECF Nos. 10 & 12.) Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the following reasons, the Court is granting Defendants' motion.

I. **Standard of Review**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

---

[1] Metro's response to the motion was filed more than three weeks late. *See* E.D. Mich. LR 7.1(e)(2)(A). Metro spends a considerable portion of its brief maligning opposing counsel, asserting that defense counsel's actions were the cause of the tardy response. Metro's attorneys should have made better use of the allotted pages by focusing, instead, on Defendants' arguments for dismissal.

2

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims

contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.   Factual and Procedural Background

Metro owned real property commonly referred to as 9592 Minock Street in Detroit, Michigan ("Property").  (ECF No. 1-1 at PageID. 13, ¶ 25.)  On or about March 1, 2021, a Certificate of Forfeiture was issued for the Property due to unpaid property taxes for 2019.  (*Id*. ¶ 29.)  The amount owed was approximately $1,019.00.  (*Id*. ¶ 30.)  Notices of the foreclosure were sent to Metro and its principal owner, Ted Sinclair, via certified mail at three different addresses (*see* ECF No. 7-4; *see also* ECF No. 1-1 at PageID. 10, ¶ 9); however, Metro claims it "did not get notice of the forfeiture because he [presumably Sinclair] moved and failed to update his address" (ECF No. 1 at PageID. 13, ¶ 32).  A personal visit also was made to the Property, and notice was posted there.  (ECF No. 7-5.)

On March 30, 2022, Defendant Eric R. Sabree, as the Treasurer for Defendant Wayne County, obtained a Judgment of Foreclosure through state-court foreclosure proceedings.  (*Id*. at PageID. 14, ¶ 33; *see also* ECF No. 7-3.)  Pursuant to that judgment, title to the Property would vest in the Wayne County Treasurer if the tax delinquency was not cured within 21 days.  (ECF No. 7-3.)  When the delinquency was not cured (*see* ECF No. 1-1 at PageID. 14, ¶ 34), title vested and the Property was sold at a public auction to a third party for $21,324.00.  (ECF No.

1-1 at PageID. 14, ¶ 35.)  Metro claims this was below the fair market value of the Property.  (*Id*.)

The sale price was above the $1,109.00 tax delinquency, however. Nevertheless, the surplus proceeds were not returned to Metro.  (*Id*. ¶ 39.)  Metro filed this action claiming that Defendants' retention of the surplus was unlawful. (*See generally* ECF No. 1-1.)  Metro alleges that Defendants did not "afford[] any process, plan, or legal mechanism for [Metro] to seek or achieve the return of [the surplus]."  (*Id*. at PageID. 14, ¶ 40.)

### III. Applicable Law & Analysis

#### A. Statutory Framework & Legal Backdrop

The Michigan General Property Tax Act ("GPTA") prescribes the process for tax foreclosures.  *See* Mich. Comp. Laws § 211 *et seq*.  Under the GPTA, a county or the State may petition for the foreclosure of properties for which taxes are delinquent and remain unpaid for a year.  *See id*. §§ 211.78-.78a, 211.78h. Property owners are provided with various notices of the foreclosure process and their right to "redeem" (i.e., the right to remove the property from the foreclosure process by paying all taxes, interest, penalties, and fees due).  *See id*. §§ 211.78a(4)-.78c, 211.78f, 211.78k.

If the property owner fails to redeem the property by the specified deadline to do so, title vests in the county or State.  *See id*. § 211.78k.  The foreclosing

entity then can sell the property. Prior to the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (2020), foreclosed property could be sold for "the minimum bid" (i.e., the amount of the tax delinquency plus various fees and costs associated with the foreclosure and sale). Additionally, the State or county could retain any surplus sale proceeds. In *Rafaeli*, however, the Court held that the retention of the surplus proceeds amounts to an unlawful taking and that former property owners are entitled to a return of the surplus.[2] *Id.* at 449-64.

The Michigan legislature responded to *Raefeli* by amending the GPTA. One of the amendments is contained in Section 211.78t, which sets forth a process for property owners to claim surplus proceeds. *See* Mich. Comp. Laws § 211.78t. Section 211.78t "is the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of [Michigan]." *Id.* § 211.78t(11); *see also In re Muskegon Cnty. Treasurer for Foreclosure*, --

---

[2] The *Rafaeli* Court "reject[ed] the premise that just compensation requires that [former property owners] be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all." 952 N.W.2d at 465. The Sixth Circuit reached the same conclusion in *Freed v. Thomas*, 81 F.4th 655 (2023), indicating that "the best evidence of a foreclosed property's value is the property's sale price, not what it was worth before the foreclosure." *Id.* at 658-59. At the time, however, the GPTA permitted the sale of foreclosed property for the minimum bid. *See* Mich. Comp. Laws § 211.78m(1) (2015). As discussed *infra*, the Michigan legislature responded to *Rafaeli* by amending the GPTA effective December 27, 2020. Included in these amendments is a requirement that property be sold for "*the greater of* the minimum bid or the fair market value of the property[.]" *Id.* § 211.78m(1) (2021 version).

N.W.3d --, 2023 WL 7093961 (Oct. 26, 2023) (holding that the GPTA's statutory framework by which a former owner of real property can claim any proceeds from the sale of foreclosed property comports with procedural due process and other constitutional requirements, and it is "the sole mechanism by which former property owners can recover proceeds remaining after the sale or transfer of their foreclosed properties"). The process that must be followed differs based on whether the property was sold before or after July 17, 2020—i.e., the date of the Michigan Supreme Court's decision in *Rafaeli*. *Compare, id.* § 211.78t(1)(a), (2)-(5) *with id.* § 211.78t(1)(b), (6).

For property sold after *Rafaeli*, such as the Property here, the GPTA requires a claimant seeking any surplus proceeds to submit a form to the foreclosing governmental unit by the July 1 immediately following the effective date of the foreclosure. *Id.* § 211.78t(2). Foreclosing governmental units must make the form available to the public on their internet websites. *Id*. Additionally, the Michigan Department of Treasury must publish the form on its website. *Id*. Claimants are required to return the form to the foreclosing governmental unit in person or by certified mail, return receipt requested. *Id*.

If a claim form is timely submitted, the GPTA establishes a deadline for the foreclosing governmental unit to respond by sending the claimant certain information concerning the sale or transfer of the property. *Id.* § 211.78t(3). This

7

information includes the date of sale or transfer, the minimum bid for the property, the amount for which the property was sold or transferred, and other costs lawfully reduced from the proceeds. *Id.* § 211.78t(3)(a)-(i). Also included is notice to the claimant that a motion to claim any remaining proceeds must be filed with the circuit court in the same proceeding in which the judgment of foreclosure of the property was effective. *Id*. § 211.78t(3)(k). The GPTA establishes deadlines by which the motion must be filed. *Id*. § 211.78t(4).

### B. The Property Here

Metro did not avail itself of the mechanism for claiming surplus proceeds in § 211.78t. Due to this failure, Defendants maintain that Metro's claims must be dismissed. This Court agrees. *See, e.g., In re Petition of Barry Cnty. Treasurer for Foreclosure*, No. 360920, 2024 WL 386939, at * (Mich. Ct. App. Feb. 1, 2024) (concluding that former property owner forfeited her right to any surplus from the sale of foreclosed property due to her failure to comply with the statutory notice requirement); *In re Hillsdale Cnty. Treasurer for Foreclosure*, Nos. 362826, 362843, 2023 WL 9007044, at *3 (Mich. Ct. App. Dec. 28, 2023) (same); *In re Muskegon Cnty. Treasurer for Foreclosure*, 2023 WL 7093961, at *1 (same); *In re West*, No. 21-31047, 2022 WL 1309939, at *7 (Bankr. E.D. Mich. May 2, 2022) (holding that the "[d]ebtor's failure to avail himself of the opportunity to recover the surplus proceeds [through the GPTA's mechanism] now precludes him from

8

asserting that his property was transferred for less than reasonably equivalent value.").

The County sent the statutory-required foreclosure notices to Metro and its principal owner and posted notice at the Property. Metro does not challenge the County's compliance with the statute, but merely alleges that it did not receive notice due to its principal's failure to update his address. (*See* ECF No. 1-1 at PageID. 13, ¶ 32.) Thus, it was Metro's failure to take the steps to protect its interest in the property or in the surplus proceeds from the tax-foreclosure sale, not any insufficiency in the County's process, that resulted in Metro's forfeiture of the proceeds. *See Nelson v. City of New York*, 352 U.S. 103, 107-08 (1956) (holding that property owners could not claim lack of notice and a lack of procedural due process where the city mailed notices to their last known address, but the owner's bookkeeper concealed the notices to also conceal the unpaid water charges which led to the foreclosure of the property); *In re Barry Cnty. Treasurer for Foreclosure*, No. 362316, 2024 WL 386959, at *4 (Mich. Ct. App. Feb. 1, 2024) (concluding that estate's failure to file the notice required under § 211.78t(2) was not excused by the fact that it did not receive notice because the treasurer sent the required notices to the listed property owners at their address of record); *see also Sidun v. Wayne Cnty. Treasurer*, 751 N.W.2d 453, (Mich. 2008) (explaining that "due process does not require that a property owner receive actual notice" but only that

9

the county employ such means as are "reasonably calculated, under all the circumstances, to apprise interested parties [of the foreclosure proceedings]") (quotation marks and citations omitted). Where state law establishes a process for property owners to secure surplus proceeds from a foreclosure sale, but they fail to avail themselves of that opportunity, the United State Supreme Court has found the foreclosing unit's retention of those proceeds lawful. *Nelson*, 352 U.S. at 110.

In *Nelson*, property owners failed to pay water charges, resulting in tax liens. *Id*. at 105-06. The city began foreclosure proceedings and sent the required notices of foreclosure to the owners, but the owners failed to redeem the properties. *Id*. at 105-06. The properties were then sold, although not through a public foreclosure sale. *Id*. at 106. The former property owners claimed the city's retention of the surplus sale proceeds deprived them of their property without due process of law. *Id*. at 109.

The Supreme Court rejected their claim because New York's statute provided a mechanism for property owners to trigger a public foreclosure sale and claim any surplus proceeds. *Id*. at 110. The Court held that "nothing in the Federal Constitution prevents [the city from foreclosing on real property and, in the absence of timely action to redeem or to recover any surplus, retaining the property or the entire proceeds of its sale] where the record shows that adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Id*.

10

"The express basis for the decision in *Nelson*, . . . was that the plaintiffs had not taken any 'timely action' to force a public foreclosure sale and 'to recover any surplus,' *even though the New York Statute expressly gave them opportunity to do so.*" *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022) (emphasis added and brackets omitted) (quoting *Nelson*, 352 U.S. at 110).

It was the absence of such an opportunity in the former version of Michigan's GPTA which led the Sixth Circuit to distinguish the case before it in *Hall* from *Nelson*. *Id.* ("Here, by contrast, the Michigan General Property Tax Act gave the plaintiffs no such opportunity at all."). The absence of this opportunity in Minnesota's foreclosure statute led the United States Supreme Court to also distinguish *Nelson* from the case before it and conclude that the former property owner alleged a viable claim under the Takings Clause. *Tyler v. Hennepin Cnty.*, -- U.S. --, 143 S. Ct. 1369, 1379 (2023) ("Unlike in *Nelson*, Minnesota's scheme provides no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the State, any excess value always remains with the State."). But the version of the GPTA applicable to the 2018 foreclosure in *Hall*, *see id.* at 188-89, is not applicable here.[3] This case is distinguishable from *Hall* and *Tyler* and more akin to *Nelson*.

---

[3] Foreclosure proceedings with respect to the Property began in March 2021. The 2020 amendments to the GPTA became effective December 22, 2020.

11

As discussed previously, pursuant to the 2020 amendments to the GPTA, the statute now provides the opportunity to claim the surplus proceeds which existed in *Nelson*.  Pursuant to *Nelson*, the availability of such an avenue forecloses Metro's claims.[4]  *See Coleman through Bunn v. District of Columbia*, 70 F. Supp. 3d 58, 80 (D.D.C. 2014) (citing *Nelson*, 352 U.S. at 109) ("*Nelson* makes clear that a Takings Clause violation regarding the retention of equity will not arise when a tax-sale statute provides an avenue for recovery of the surplus equity."); *see also Rafaeli*, 952 N.W.2d at 461 ("*Nelson* . . . informs us that no federal Takings Clause claim will exist when there is a statutory path to recover the surplus proceeds but the property owners fail to avail themselves of that procedure.").

For these reasons, the Court concludes that Metro's Complaint must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 7) is **GRANTED**.

                                                                                s/ Linda V. Parker
                                                                                LINDA V. PARKER
                                                                                U.S. DISTRICT JUDGE

Dated: February 15, 2024

---

[4] *Hall* instructs that Metro's Eighth Amendment, unjust enrichment, and inverse condemnation claims also fail on their merits irrespective of whether Metro availed itself of the opportunity to claim the surplus proceeds.  51 F.4th at 196-97.